IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MICHAEL K. GREEN, *Personal Representative of the Estate of William S. Green*, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> CHICAGO TITLE INSURANCE COMPANY, *et al.*, <br><br> Defendants. | CV 20-37-BLG-SPW-TJC <br><br><br> **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE** |

Plaintiffs Michael K. Green, individually and as personal representative of the Estate of William S. Green, and Bradley A. Green, Vivian Diane Grote, and W. Scott Green, individually, (collectively, "Plaintiffs") bring this action against Chicago Title Insurance Company ("Chicago Title"), Fidelity National Title Group ("Fidelity"), and Thomas Zengal ("Zengal"), individually, (collectively, "Defendants") for denial of a title insurance claim relating to lack of legal access to family land in Montana. (Doc. 4.) Plaintiffs plead claims for breach of contract (Count I), declaratory judgment (Count II), unfair trade practices (Count III), common law bad faith (Count IV), and tortious interference with an inheritance against Chicago Title and Fidelity (Count V) and individually against Zengal (Count VI). (*Id.* at ¶¶ 34-73.)

1

Before the Court are the parties' motions for summary judgment.  (Docs. 18, 23.)  Plaintiffs move for partial summary judgment as to coverage under a Title Insurance Policy, which would in effect resolve Counts I-III.  (Docs. 18, 20 at 2.)  Defendants cross-move for summary judgment as to all counts in Plaintiffs' Complaint.  (Doc. 23.)  The motions have been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B), and are fully briefed and ripe for review.  For the following reasons, the Court recommends Plaintiffs' motion be denied and Defendants' motion be granted.

I.    **Factual Background**[1]

William S. Green and his wife Esther W. Green (collectively, "the Greens") purchased land east of Billings, Montana in Yellowstone County from the Custer Coulee Cattle Company on April 19, 1989, as joint tenants with right of survivorship.  (*See* Doc. 19-1.)  The Greens also purchased title insurance on the property from then-Chicago Title Insurance Company of Idaho, Chicago Title's predecessor, on April 26, 1989, policy number M7-70846-OP ("Policy") with coverage limits of $87,800.  (*See* Doc. 19-2.)  Among its provisions, the Policy insured against loss or damage by reason of "[l]ack of a right of access to and from the land."  (*Id.* at 2.)

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment, are taken from the parties' submissions, and are undisputed unless otherwise indicated.

On December 26, 2012, the Greens created irrevocable trusts, the William S. Green Family Trust and the Esther W. Green Family Trust ("Trusts"), and quitclaimed their individual, undivided half-interests in the Property to their respective Trusts. (*See* Docs. 19-3, 19-4, 19-5.) William S. Green was the designated trustee of both Trusts. (Doc. 19-3 at 3, 26.) The quitclaim deeds declared that the grantor "does hereby convey, release, remise and forever quit claim unto William S. Green, Trustee ...," and that the "deed releases all interest acquired by Grantor in and to the subject property from the date hereof through and including the date of recording said deed." (Docs. 19-4, 19-5.) The deeds were recorded on December 28, 2012. (*Id.*)

William and Esther died in the winter/spring of 2018. Shortly thereafter, on April 11, 2018, the Trusts individually conveyed their respective interests in the Property via trustee's deeds to the Plaintiffs. Plaintiffs allege that they subsequently discovered that there was no legal access to the property. (*See* Doc. 20-1.) Thus, on December 13, 2019, Plaintiffs submitted a claim to Chicago Title seeking redress for the lack of legal access under the Policy.

Chicago Title denied the claim on February 3, 2020. (*See* Doc. 4-4.) In its denial letter, Chicago Title reasoned that "the Claimants do not qualify as insureds as defined by the Policy." (*Id.* at 1.) The Policy defined "insureds" as:

> The insured named in Schedule A, and, subject to any rights or defenses the Company would have had against the named insured, those who

3

succeed to the interest of the named insured by operation of law as distinguished from purchase including, but not limited to, heirs distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors.

(Doc. 19-2 at 3.)  Schedule A listed "William S. Green and Esther W. Green, Husband and Wife" as the insureds.  (*Id.* at 6.)  Chicago Title further explained that:

> By the December 28, 2012 conveyances, the Named Insureds transferred their interest in the Property to the Trusts.  The Trusts are not named in Schedule A of the Policy as "insureds", nor are they successor insureds under the above-described definition [of "insureds"] because the transfer to the Trusts did not occur by operation of law. Upon conveyance of the Property, the Policy is terminated, but certain insuring provisions continue in favor of the Named Insureds in limited circumstances. Please refer to paragraph 2 of the Policy's Conditions and Stipulations:
>
> 2.  CONTINUATION OF INSURANCE AFTER CONVEYANCE OF TITLE
>
> The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants and warranty made by the insured in any transfer or conveyance of the estate or interest. The policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land; or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(Doc. 4-4 at 2; *see* Doc. 19-2 at 3.)  Chicago Title concluded that there was no continuation of insurance after conveyance because the Greens did not retain an interest in the Property when they voluntarily transferred it to the Trusts via

quitclaim deed, "which does not contain any warranties or covenants of title under which the Named Insureds would have liability to the Trusts." (Doc. 4-4 at 2.) Thus, Chicago Title's position was that coverage terminated upon conveyance to the Trusts, and neither the Trusts nor its successors have standing to bring a claim under the Policy. (*Id.*)

Plaintiffs brought this action originally in the Montana Thirteenth Judicial District Court, Yellowstone County, on February 25, 2020. (Doc. 4.) Defendants removed the case to this Court on March 3, 2020, alleging complete diversity between parties and an amount in controversy of $87,800. (Doc. 1.) Plaintiffs now move for summary judgment, asserting their claim was erroneously denied because William retained both a legal and equitable interest in the Property such that the Policy continued in force and subsequent transfers occurred as a matter of law. (Doc. 20 at 9.)

Defendants cross-move for summary judgment, asserting that the named insureds voluntarily conveyed their interests in the Property to the Trusts; thus, coverage terminated upon conveyance and Plaintiffs did not succeed to their interests by operation of law. (Doc. 24 at 7.)

/ / /

/ / /

/ / /

5

## II.     Legal Standard

### A.     Summary Judgment

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable factfinder to return a verdict for the nonmoving party.  *Id*.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  If the moving party fails to discharge this initial burden, summary judgment must be denied; the court need not consider the non-moving party's evidence.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

/ / /

**B.     Application of Montana Law**

The Court's jurisdiction over this action is based on diversity of citizenship. Therefore, the Court must apply the substantive law of Montana. *In re Cty. of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015). In Montana, the interpretation of an insurance contract is a question of law. *Scentry Biologicals, Inc. v. Midcontinent Cas. Co.*, 319 P.3d 1260, 1264 (Mont. 2014). A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect. *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093, 1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021 (Mont. 2008)). The terms and words used in an insurance policy are to be given their usual meaning and construed using common sense. *Hardy v. Progressive Specialty Ins. Co.*, 112, 67 P.3d 892, 896 (Mont. 2003). Any ambiguities in the insurance contract are construed against the insurer and in favor of extending coverage. *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (Mont. 2009).

"An ambiguity exists when the policy, taken as a whole, is reasonably susceptible to two different interpretations." *Heggem v. Capitol Indem. Corp.*, 154 P.3d 1189, 1193 (Mont. 2007). But a court should not "seize upon certain and definite covenants expressed in plain English with violent hands, and distort them

so as to include a risk clearly excluded by the insurance contract." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005). Moreover, "a court may not create an ambiguity where none exists, nor may a court rewrite an insurance policy by ignoring clear and unambiguous language to accomplish a 'good purpose.'" *Heggem*, 154 P.3d at 1193.

## III.   Discussion

Plaintiffs advance two primary arguments in support of their motion for summary judgment.  First, Plaintiffs contend that William S. Green retained a legal ownership interest in the Property after it was conveyed to the Trusts, thus the Policy "continued in force."  (Doc. 20 at 10.)  Second, Plaintiffs argue that any subsequent transfers were to eligible insured parties by operation of law, thus coverage continued under the Policy.  (*Id.* at 13.)

Defendants' cross-move for summary judgment, arguing first that the Policy ceased coverage upon conveyance of the Property from the Greens to their respective Trusts.  (Doc. 24 at 21-26.)   Second, Plaintiffs and their predecessors, the Green Family Trusts, were not insureds under the policy, because the transfer to the Trusts were voluntary and did not occur by operation of law.  (*Id.* at 14-15, 19-21.)

/ / /

/ / /

**A.      Green's Retention of Property Interest as Trustor/Trustee**

As discussed above, coverage under the policy continues in favor of an insured "only so long as the insured retains an estate or interest in the land …." (Doc. 19-2 at 3.)  Plaintiffs assert that William S. Green retained an estate or interest in the Property after the Greens transferred their interests to their respective Trusts because he was the trustee.  (Doc. 20 at 10.)  In support, Plaintiffs rely on Mont. Code Ann. § 72-38-1111(2), which provides that "… a conveyance of real property to a trustee designated as such in the conveyances vests the whole estate conveyed in the trustee …"; and *In re Raymond W. George Trust*, 986 P.2d 427, 431 (Mont. 1999) (stating "the beneficiaries of an express trust in real property take no estate or interest in the trust property and that the trustee has the whole estate in the trust property."). (*Id.* at 11.)  Plaintiffs contend that William's alleged retention of an interest as Trustee satisfies the continuation of coverage provision in the Policy.  (*Id.* at 12.)

Defendants argue that the conveyance of the Property to the Trusts with William S. Green as trustee did not result in William S. Green, individually, retaining interest in the Property.  (Docs. 10-2 at 6; 24 at 23.)  Instead, Defendants assert that coverage terminated at the time of voluntary conveyance of the Property to the Trusts.  (*Id.* at 23-24.)  The Court agrees.

It is undisputed that the Greens conveyed their individual half-interests in the Property to their respective Trusts via quitclaim deeds.  (Docs. 19-4, 19-5.)  In the plain language of the instruments, the quitclaim deeds released "all interest acquired by [William S. or Esther W] in and to the subject property …"  (See, *Id.*)  The Greens named William S. Green as trustee of their respective Trusts but did not expressly retain an estate or interest in the land.

Under Montana law, "[a] transfer vests in the transferee all the actual title to the thing transferred which the transferor then has unless a different intention is expressed or is necessarily implied."  Mont. Code Ann. § 70-1-519.  In *Romain v. Earl Schwartz Co.*, the Montana Supreme Court noted that language of a deed giving up all right, title and interest in the property is a clear indication of intent to transfer full title.  *Romain v. Earl Schwartz Co.*, 779 P.2d 54, 56 (Mont. 1989).  "It is presumed that one who conveys property by deed intends to convey his entire interest unless a portion of the interest is expressly excepted."  *Id.*  Here, the Greens' quitclaim deeds plainly do not express any other intent than to convey "all interest."

Plaintiffs are correct that Montana law provides that a conveyance of real property to a trustee vests the whole estate conveyed in the trustee.  Mont. Code Ann. § 72-38-1111(2).  But the trustee does not hold a personal or individual interest or estate in the trust property.  The Montana Code makes a clear distinction

10

between property conveyed in the grantee's individual capacity, as opposed to his/her capacity as trustee of the trust.  With respect to conveyances of real property:

> (4)  If there is not clear reference to or designation of a grantee as trustee in a conveyance … the conveyance must be considered to be absolute of the grantee … despite any valid trust that may exist.
>
> ***
>
> (8)  The designation of the name of a trust in a recorded conveyance vests the estate in the trustee of the trust.  A subsequent conveyance may be made by the trustee.

Mont. Code Ann. 72-38-1111(4) & (8).

Further, the trustee is required to administer the trust solely in furtherance of the interests of the beneficiaries, not for his/her personal interests.  See Mont. Code Ann. § 72-38-802(1) ("[a] trustee shall administer the trust solely in the interests of the beneficiaries."); Mont. Code Ann. 72-38-802(2) (transaction "entered into by the trustee for the trustee's own personal account or that is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable …"); and Mont. Code Ann. § 72-38-801 ("trustee shall administer the trust … in accordance with its terms and purposes and the interests of the beneficiaries….") Additionally, Montana law further makes clear that "[t]rust property is not subject to personal obligations of the trustee, even if the trustee becomes insolvent or bankrupt."  Mont. Code Ann. § 72-38-507.  These statutes make clear that while

11

the trustee is vested with the whole estate in the trust property, he/she does not have a personal interest in the property.

Therefore, while the conveyance vested title to the Property in William S. Green, as trustee, William S. Green, individually, did not retain any personal interest in the Property. The Property was conveyed to the Trusts, which were separate and distinct entities. Accordingly, neither William S. Green nor Esther W. Green retained an estate or interest in the insured property, and coverage under the policy lapsed upon conveyance of the Property to the Trusts.

**B.    Plaintiffs' Insured Status**

In addition to determining whether the policy continued in effect after the conveyance of the Property to the trusts, it must be determined whether Plaintiffs are insureds under the policy. As noted above, Schedule A of the policy identifies the named insureds as "WILLIAM S. GREEN and ESTHER W. GREEN, husband and wife." (Doc. 19-2 at 6.) In addition, however, the policy provides that an insured under the policy also includes "those who succeed to the interest of the named insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors." (*Id.* at 3.) Since neither the Trusts nor Plaintiffs are not named insureds, they can only be considered as insureds

under the policy if they succeeded to the interests of William and Esther Green "by operation of law."

Several courts have considered who succeeds to a named-insured's interest by operation of law under title insurance policies nearly identical to the policy involved here. In general, those courts have determined that title passes by operation of law when "*the change is automatic or involuntary.*" *Carney-Dunphy v. Title Co. of Jersey and Chicago Title Ins. Co.,* 2009 WL 1874060 at *5 (D.C. D.N.J. June 30, 2009) (emphasis in original).

In *Kwok v. Transnation Title Ins. Co.,* 170 Cal.App.4th 1562 (2009), for example, the Court considered a voluntary transfer of property from an insured into a family trust. In that case, the plaintiffs had formed an LLC, with the plaintiffs being the only members. *Kwok*, 140 Cal.App.4th at 1565. The LLC purchased property, and the defendant issued a title insurance policy insuring the LLC's title to the property and an easement over a neighboring parcel. *Id.* Later, the LLC transferred title to the property to the plaintiffs, as trustees of a revocable trust. *Id.* When an easement dispute arose with the plaintiffs' neighbors, the defendant denied coverage of the claim on the grounds that the plaintiffs, as trustees of the trust, were not insureds under the policy. *Id.* at 1565-6.

As in this case, the policy defined an insured as "the insured named in schedule A, and … those who succeed to the interest of the named insured by

13

operation of law ….” *Id.* at 1564.  The LLC was the only named insured, and the defendant asserted that the plaintiffs, as trustees, did not succeed as insured, because the transfer of the property from the LLC to the plaintiffs was a voluntary act and did not arise by operation of law. *Id*. at 1567.  The California appellate court agreed, finding that the transfer was voluntarily made “by deed from the named insured to [plaintiffs] as trustees of the family trust, a totally separate legal entity.” *Id*.

The court also rejected the contention that the plaintiffs continued to hold a beneficial interest in the property, since the transfer only effected a change in the method of holding title and did not change their beneficial interest. *Id.* at 1571. The court said the definition of insureds under the policy did not include beneficial owners; the plaintiffs could only become insureds by operation of law. *Id.*  The court concluded that “[t]he transfer of property by an insured into a family trust is a voluntary act and not one that arises by operation of law.” *Id.*

Several other courts have similarly held that the voluntary transfer from one entity to another is not one which occurs by operation of law.  See e.g., *Shotmeyer v. New Jersey Title Ins. Co.,* 948 A.2d 600, 608-09 (N.J. 2008) (title insurance coverage denied on grounds that transfer of ownership by the named insured “Henry J. Shotmeyer and Charles P. Shotmeyer, Partners trading as Beaver Run Farms, a General Partnership” to “Beaver Run Farms, L.P. a New Jersey Limited

Partnership" was a voluntary conveyance to a separate and distinct entity and was not by operation of law); *Pioneer National Title Ins. Co. v. Child, Inc.* (401 A.2d 68, 71 (Del. 1979) (coverage denied where transfer of title of property from named insured "Child Foundation" to "Child, Inc." through the purchaser of the property was not by operation of law); *Carney-Dunphy*, 2009 WL 1874060, at *6 (coverage denied where transfer of title from named insured to an irrevocable trust did not occur by operation of law). But cf., *North Fork Land & Cattle, LLLP v. First American Title Ins. Co.*, 362 P.3d 341 (Wyo. 2015).[2]

Just as in the foregoing cases, the conveyance of the property by the Greens to the trusts was a voluntary conveyance to a separate and distinct entity and did not occur by operation of law. Accordingly, the title insurance policy lapsed upon conveyance to the Trusts.

Therefore, the Court recommends Plaintiffs' motion be denied and Defendants' cross-motion as to coverage be granted.

**IV. Conclusion**

Based on the foregoing findings, the Court RECOMMENDS the following:

---

[2] The Wyoming Supreme Court found that where the insured party transfers property to a Wyoming limited partnership made up only of the insured parties and their legal heirs for the express purpose of estate planning, the transaction was within the meaning of a transfer by operation of law. The Wyoming Court acknowledged, however, that it was taking a minority position on the issue and cautioned that its holding was limited to the specific facts of that case. *Id.* at 352.

1.     Plaintiffs motion for partial summary judgment (Doc. 18) be

DENIED; and

2.     Defendants' cross-motion for summary judgment (Doc. 23) be

GRANTED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy

of the Findings and Recommendation of United States Magistrate Judge upon the

parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendation must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof, or

objection is waived.  D. Mont. Local Rule 72.3.

**IT IS ORDERED**.

DATED this 31st day of August, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge